## BRENNAN *v.* HEENAN.

CHARGE TO THE JURY—VERDICT.—Courts will not interfere with the verdict, because such verdict does not accord with the exact views of the case taken by the court, of the preponderance of evidence, or that the court would have arrived at a different conclusion from that of the jury.

IDEM.—Even if an erroneous charge to the jury has been given, the verdict will not be disturbed if it clearly appears that no injustice has been done, or that the jury have not been misled thereby in the finding of such verdict.

APPEAL from the District Court of the First Judicial District for the County of Laramie.

This was an action brought by Heenan to recover judgment against Brennan in the district court of Laramie county, for money alleged to be due him for building a billiard hall in Cheyenne, under a contract with Brennan. A contract was made in writing between the parties, by which plaintiff bound himself to build a house according to its specifications. Subsequent to the making of the contract, and after work had been commenced under it, certain additions to the building were proposed by defendant in the district court, and the plaintiff claimed that that additional work was done by him at defendant's request, and that the same in all amounted to three thousand eight hundred dollars, or thereabouts, which defendant promised to pay. The defendant in his answer denied any indebtedness, and pleads payment; also a counter-claim of a bar bill; also a counter-claim for damages for the failure of defendant to complete the building in accordance with the specifications of his original contract. Defendant also in his answer denies that all the work done under the contract, as modified, was order-

ed by him, or that any of it was done by virtue of an express contract, and that the price of any of it was agreed upon beforehand. The testimony of the respective parties was introduced without objections, and the principal errors assigned in the supreme court relate almost exclusively to the charge of the district court, which was as follows as to the points in question:

"There are very few legal points involved in the consideration of this case; * * * the evidence is very contradictory, amounting to such a conflict that I do not pretend to be able to reconcile it; I therefore submit it to you with the remark, that if you cannot come to a conclusion as to the facts as given by the respective parties, that you will have to be governed by the weight of the testimony. It is a maxim of the law that the burden of proof rests upon the one who is supporting the affirmative of any given proposition; that is, that before a plaintiff can recover he must make out at least a *prima facie* case.

"I am asked by the counsel for the plaintiff in this action to give you the following instructions: Where one party is indebted to another on several contracts or items of account, it is his right and privilege in making a payment to direct what application shall be made of the same with reference to the several items of indebtedness; but where such appropriation is not made by the debtor at the time of payment, then the creditor can apply the money received to the payment of any portion of the indebtedness he may choose.

"This, gentlemen, is the law, provided the facts of the case are such as to render the instruction asked for applicable. But before the payment referred to can be applied to the payment upon the verbal contract, you must be satisfied that such a contract was made; and then before it can be appropriated to the payment of the extra work it must be shown that the extra work had been completed, and that in consequence of that extra work the plaintiff had two separate and distinct accounts against defendant.

"I am further asked to instruct you, that under the origi-

nal written contract between the plaintiff and defendant in this action, the plaintiff was bound to build the house according to plans and specifications therein contained within six weeks from the twenty-fifth of April, 1872; but the limitation as to time applied only to work specified in the contract, and to nothing more; and if the failure to finish the building within that time was caused or brought about by the act of the defendant in making additions to the building, or in any other way, he is himself responsible, and cannot recover damages for the delay, unless it shall appear that that delay was unreasonable under the modified arrangement."

The court further instructs the jury, "That the plaintiff was not bound to do any other work within six weeks from the twenty-fifth day of April, 1872, except that specified in the original written contract, without having first, upon a sufficient or good consideration, agreed so to do. Now, if there was such an amount of extra work that it would be impossible to complete the building within the time specified in the written contract, then the plaintiff would be released from the fulfillment of that portion of the written contract by operation of law, without any alteration of the written instrument.

"But it is for you to consider, under the evidence, whether this was so or not; you will bear in mind that the statements of the parties upon this point; the plaintiff claims that the extra work extended the time, while it is in evidence that the work was stopped for want of materials; and further, that the plaintiff told defendant after his, defendant's, return from Chicago, that he, plaintiff, would have the building completed within the contract-time, notwithstanding the past delays. With regard to the extra work, you will recollect the conflicting testimony; plaintiff alleging that he was to have a definite sum for the cellar wall on the east and north sides of the building, and a reasonable allowance for the western wall and the enlargement of the cellar, while the defendant denies having made any definite

bargain for any portion of the extra work, except under the contingency that Messrs. Ellis & Hullburt were to put up a building and use his wall, paying one half the cost thereof.

"You will also take into consideration the set-off, claimed by defendant, who alleges that the building does not correspond with the specifications mentioned in the contract in several particulars; that the building was not as high as it was to have been built; that the ceiling is not as high as agreed to, and that the roof was defective. If the defendant had refused to take the building off of the contractor's hands for these reasons, he might have been justified in such refusal; but, having accepted the building without any such objections, it is too late now to set them up. With regard to the insufficiency of the roof, it was the duty of the defendant to require the plaintiff to put the roof in proper condition at his, plaintiff's, expense, and if he failed to do so, after being so requested, then the defendant would be justified in employing some one else to do it, and the plaintiff should pay the cost of such work. On the question of damages on account of delay, there is no fixed rule by which you can be governed. No doubt the defendant sustained damages by reason of the delay, but it will not do to fix these damages by the amount he subsequently received. This standard of damages would be too indefinite. I will therefore submit the case to you under the evidence, by which you must be governed, and you will have to try to arrive at your verdict from that source, if you can so reconcile the statements of the parties; and if you cannot, you will bear in mind what I have before stated—that you will find where the preponderance of evidence rests, and decide accordingly."

To all of which charge the defendant excepted, and also to the refusal of the court to give the following, which was drawn up and presented to the court by defendant's counsel: "That in this action no recovery can be had by the plaintiff for the reasonable value of the extra work alleged to have

been performed in laying the foundation of the building in question deeper than it was to be, under the written contract given in evidence, and for enlarging the cellar; but if the plaintiff can recover for such extra work, he must recover according to the express agreement of the parties, and, if he recover at all, he must recover the price as to such extra work, fixed by the parties themselves. That the plaintiff in this action can recover nothing for the reasonable value of the work of enlarging the cellar, mentioned in the evidence before them, because there is no claim for such work in the amended petition, and no proof of the reasonable value of such work. That in this action the plaintiff cannot recover for the reasonable value of any of the extra work, alleged to have been performed by plaintiff for defendant, except for the platform and the extra wall adjoining Masten's cellar, because, as to the balance of the alleged extra work, there is no proof before you as to the value thereof."

*W. W. Corlett*, for appellant.

The first error assigned, and relied upon by the appellant, relates to the refusal of the court to charge the jury that as to the extra work of enlarging the cellar and laying additional foundation. The request to charge the jury on the point was, in substance, that no recovery could be had by plaintiff for such extra work, according to the reasonable value thereof, but that the recovery, if any could be had, must be the contract price, as fixed by the parties. The only testimony showing any authority whatever for doing that work is that of Heenan himself, and his testimony is that a fixed price, five hundred dollars, was agreed on for the work. It hardly needs any citation of authority to show that when parties by contract fix the price to be paid for services, that price as fixed must govern, and not the reasonable value.

The second error assigned is the refusal of the court to instruct the jury that no recovery in the action could be had

for the reasonable value of the work of enlarging the cellar, for the reason that no claim for such work is made in the petition, and there is no proof of the value of the work.

The third error assigned is the refusal of the court to charge the jury that no recovery in the action can be had for the reasonable value of any of the extra work, except for the platform and the extra wall adjoining Masten's cellar. There was no evidence before the jury of the reasonable value of any other portion of the extra work. The five following errors assigned refer to the questions raised in the first three:

The eighth exception and error assigned refers to the charge as to the question of damages. This instruction clearly permits the jury to allow a reasonable sum for the enlargement of the cellar and portions of the foundation walls, and hence cannot but be erroneous, especially as the jury are allowed to give what from the evidence is right for all these things.

The ninth error assigned is that the jury were told in substance that if the defendant accepted the building he waived all claim for damages arising out of the imperfect construction of the building, and if the roof leaked he had no claim for damages until he first requested the plaintiff to repair the roof. A recurrence to the foundation of a right of action must satisfy any one that this instruction was error.

The tenth error assigned relates to that portion of the charge wherein the court asserts that on the question of damages for delay, there is no rule by which the jury can be governed.

It is respectfully submitted that for all actions for the breach of contract the measure of damages is a rule of law, to be given to the jury by the court, and as this was an action on breach of contract, the court clearly erred in informing the jury that there was no rule by which they should be governed: see Sedgwick on the Measure of Damages.

The eleventh and last error assigned, is the refusal of the

court to sustain the motion for a new trial. Upon the question of the effect of erroneous instruction and refusal to instruct properly when requested, see 3 Graham & Waterman on New Trial, 768 *et seq;* 7 B. Munro R. 193; 1 Pick. 206; 2 Pick. 655, 665. From these authorities I extract this as the rule when erroneous instructions have been given: " Though the verdict of the jury in the court below be in accordance with the opinion of the appellate court, yet if the former gave erroneous instructions to the jury as to the law, so that it is not entirely certain that justice has been done, the latter will grant a new trial:" Graham & Waterman, 768.

*E. P. Johnson,* for defendant in error, contended:

I. Courts in which cases are tried do not interfere with a verdict simply because it is not in accordance with their views of the weight of evidence, nor because they would have arrived at a different conclusion from that of the jury, but only when the verdict is so far unsupported by evidence as to lead to the conclusion that the jury acted from improper motives or misapprehension, and injustice has been done in consequence, it being the province of the jury to weigh the evidence: Nash's Plead. and Prac. 549; 3 Wat. on New Trials, 1231. So, also, where the judge who presided at the trial approves the verdict, and refuses to set it aside on the ground that it is not supported by evidence, appellate courts exercised the power with still greater reluctance and caution, and only in the clearest cases: 3 Wat. on New Trials, 1213–1215, 1230. While in many cases appellate courts have refused to exercise the power at all, even though it is clear that injustice has been done: 3 Wat. on N. T. 1229, 1230.

II. Although there be error in the charge of the judge, yet if it appears from the record that no injustice has been done by the verdict, and that the jury were not actually misled to the injury of the party, against whom they find the error in that case, will furnish no ground for disturbing the

verdict, or reversing the judgment: 3 Wat. on N. T. 118, 717, 811.

III. It appears by the record that defendant in error, in his petition in the court below, alleged that he did the extra work at the request of the plaintiff in error; that the same was worth a certain sum, which plaintiff in error promised to pay. Whereas, in his testimony it appears that he did the work mentioned therein for a price agreed upon in advance with the exception of the platform. Plaintiff in error claims a variance between pleadings and proofs, or that the pleadings were unsupported by the testimony, and strenuously urged his objections to the instructions to the court below, and the refusal to give those requested by him, on the motion for a new trial, and many of the errors complained of grow out of the alleged discrepancy between proof and pleading. A variance is not material, unless it have actually misled the adverse party to his prejudice, and when prejudice is alleged it must be proven to the satisfaction of the court before it becomes necessary for the court to even order an amendment: Code of Proc., secs. 142, 143.

It will be seen that no effort was made to offer that proof to the court, and as a consequence the plaintiff in error had no standing on a motion for a new trial, so far as any objection growing out of that matter was concerned. But even if he had then offered to prove that he was misled to his prejudice, it came too late, for having failed to take advantage of it on the trial where amendment could be made, and the case proceed, he cannot afterwards do so: Nash Plead. and Prac. 120; 3 Hill. 237; 5 Wend. 301; 15 Johnson, 210; 17 Wend. 71. But the variance being an immaterial one or not proven to be otherwise, may be disregarded and the fact found according to the proof: Seney's Code, 174–5; Voorhies' Code, 339, 340, 341 and 342; and disregarding the variance is equivalent to amendment, or the amendment may be made on an appeal: *Coleman* v. *Playstead*, 36 Barb. 29. In the case of *Fort* v. *Gooding*, 9 Barb. 371, which is a case in point presenting the same phase as the one at bar,

it was held that evidence of a special agreement is admissible in an action by a daughter against her father for wages, although plaintiff claimed to recover upon an implied agreement only, defendant not having been misled; and ample reason to justify the holding in the above case is found in the law as expounded in Chitty on Cont. 17.

IV. The plaintiff in error in his answer below claimed damages for failure of defendant in error to complete the building in the time specified in the original contract. Whereas defendant in error claimed in his testimony that, by reason of the change of plan and the extra work required by the plaintiff in error himself, it was impossible to complete the building in that time, and also that the modification of the original contract necessarily worked an enlargement of the time. It has been held that a parol modification of a written contract makes it all parol: 2 Watts, 451–456, 457. And where the subsequent parol modification is based upon a consideration, suit should be brought on the contract as modified. As the written contract is in that case considered incorporated with it (the parol) : Chitty on Cont. 115, note a.

At any rate it is unquestionably the right of parties to a contract to make a subsequent contract (and this without regard to kind, whether either are under seal or parol, or both: Chitty on Contracts, 116, note) that will either in express terms, or by necessary implication, enlarge a contract, modify or altogether vacate it: Chitty on Con. 115; 2 Par. on Con. 47, 48, 49, 554. And in all cases whatever, a promissor will be discharged from all liability when the non-performance of his obligation is caused by the consent, act or fault of the other contracting party: 2 Par. on Con. 676, note 9; *Cutler* v. *Powell*, 2 Smith Lead. Cases, 47, 48, 49, subdivision 4; 3 Hill, 129; 9 N. Y. 93; 4 Cowen, 564.

By the Court, CAREY, J.    This cause was tried at March term, 1873, on an amended petition, answer and reply. The amended petition alleges that James Brennan, defendant (appellant in this court), is indebted to William Heenan,

plaintiff (appellee in this court), in the sum of three thousand two hundred and fifty dollars, on a certain contract for the erection of a building in the city of Cheyenne. And also in the sum of five hundred and eighty-five dollars and fifty cents for extra work in and about said building, performed and done at the instance and request of appellant.

The answer of defendant admits the execution of the contract, and admits the claim for a portion of the extra work, but pleads an offset upon an account for two hundred and eighty-five dollars and twenty-five cents, and a counter-claim for alleged breaches of the contract, and also alleges payment of all moneys due plaintiff. The reply is a general denial.

The jury that tried the case found for the plaintiff (appellee in this court) and assessed his damage at four hundred dollars. A motion was made to set aside the verdict and for a new trial, alleging the following reasons why the verdict should be set aside and a new trial granted, viz.: That the assessment of damages by the jury was excessive; that the verdict was not sustained by sufficient evidence; that the verdict was contrary to law; that the court erred in its instructions to the jury; and that the court erred in refusing to instruct the jury as requested.

The court, after argument, overruled the motion.

We are satisfied, from the examination of the entire record in this case, that no injustice was done the appellant by the verdict given by the jury in the court below.

Judgment affirmed.